UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CAROLYN M. GREENMAN,  )
                                       Plaintiff,  )    Case No. 1:08-cv-825

v.  )

  )    Honorable Paul L. Maloney

COMMISSIONER OF
SOCIAL SECURITY,  )

  )    **REPORT AND RECOMMENDATION**

                                       Defendant.  )

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of a partially favorable decision of the Commissioner of Social Security. Plaintiff filed her applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on December 20, 2002.[1] (A.R. 94-96). Plaintiff claims a March 23, 2000 onset of disability. (Claim preclusion stemming from this court's judgment affirming the Commissioner's decision denying an earlier claim for DIB benefits bars any claim by plaintiff of an onset of disability on or before March 22, 2000. (A.R. 41-48, 51-65)). Her disability insured status expired on December 31, 2002. Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before December 31, 2002. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff's claims were denied on initial review. (A.R. 49, 66-69).

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, January 2003 is plaintiff's earliest possible entitlement to SSI benefits.

On May 8, 2006, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 441-97). On March 29, 2007, the ALJ issued a partially favorable decision. The ALJ found that plaintiff was not disabled from March 23, 2000, through August 3, 2003, but was disabled on and after August 4, 2003. (A.R. 17-27). On July 1, 2008, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

On September 2, 2008, plaintiff filed her complaint seeking judicial review of the portion of the Commissioner's decision finding that she was not disabled before August 4, 2003. She raises the following issues:

1. The Commissioner's decision denying plaintiff's claim for DIB benefits is not supported by substantial evidence because:

    A. The back injury plaintiff suffered resulted in a failed back surgery, and she has severe degenerative disc disease, post lumbar laminectomy syndrome, rheumatoid arthritis, Meniere's disease with middle and inner ear implant, osteoporosis, anxiety, and depression;

    B. Objective medical evidence of record "requires a finding of disability" on or before December 2001;

    C. The ALJ's credibility determination is not supported by substantial evidence because the record supports plaintiff's credibility and the opinions of her treating physicians "as to the severity and continuity of her symptoms prior to December of 2001[,] when evaluated in accordance with SSR 97-7p[;]"[2]

    D. "The ALJ failed to give adequate weight and consideration to the combined effects of the severe and non-severe impairments, both exertional and non-exertional disabilities of the plaintiff contrary to 20 C.F.R. § 404.1527 and SSR 96-8p[;]"

---

[2]Plaintiff capitalized the first letter in almost every word within her statement of questions presented for review. (Plf. Brief at v, docket # 11). The statement of questions is modified herein only to conform to Standard English.

  2.  The Commissioner's decision finding that plaintiff was not disabled before August 4, 2003, is not supported by substantial evidence.

(Plf. Brief at v, Statement of Issues, docket # 11). Upon review, I find that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision, and recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the

[Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

Plaintiff met the disability insured requirement of the Social Security Act on March 23, 2000, and continued to meet the requirement through December 31, 2002, but not thereafter. (A.R. 20). Plaintiff had not engaged in substantial gainful activity on or after March 23, 2000. (A.R. 20). The ALJ found that plaintiff had the following severe impairments: degenerative disc disease, post lumbar laminectomy syndrome, depression, and anxiety. (A.R. 20). She did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 21).

The ALJ found that before August 4, 2003, plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, prior to August 4, 2003, the claimant had the residual functional capacity to lift or carry a maximum of 10

pounds occasionally and 5 pounds frequently. In an eight-hour workday, the claimant could stand or walk for two hours and sit for six hours. She could only occasionally bend, twist or turn. The claimant could do no climbing, crawling, squatting or kneeling. She could use no air or vibrating tools. The claimant could not work around unprotected machinery or at unprotected heights. She could only do simple routine 1, 2 or 3 step process jobs.

(A.R. 22). The ALJ found that plaintiff's testimony was not fully credible:

> The claimant testified that she has a health care aide help her with household chores. She stated that she lives with her 10 year old son. The claimant testified she has constant back pain. The claimant rated her back pain level a 7 to 8 [on a scale of] 10 and by the end of the day a 9 or 10 [out of 10]. She stated she has to recline and put her feet up. The claimant testified she has balance problems and uses a cane. She states she is tearful and thinks about suicide due to her physical condition. The claimant testified she participated in individual counseling and group therapy. She stated she has difficulty sleeping at night and takes naps during the day.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to August [4,] 2003.
>
> The claimant testified that she is tearful and thinks about suicide but never reported it to her medical sources prior to August 2003. The claimant testified her back pain level is a 7 to 10 [out of 10,] but in September 2000 she stated that her pain level was a 4 to 5 [out of] 10. In December 2001 it was noted in the Pain Clinic progress notes that the claimant continues to do well and was stable on her medications (Exhibit 1F)[A.R. 176-207].
>
> As for the opinion evidence, in April 2003[,] Horace Davis[,] D.O., a family practitioner, opined that the claimant would not be a candidate for any form of gainful employment now or in the future (Exhibit 3F)[A.R. 226-27]. This opinion is not supported by Dr. Davis'[s] records[, n]or consistent with the record as a whole. Furthermore, Dr. Davis is not a pain specialist. Therefore[,] the undersigned rejects this opinion. In addition, the issue of disability is reserved for the Commissioner.
>
> For the period of March 23, 2000 to August 4, 2003[,] the claimant had degenerative disc disease; post lumbar laminectomy syndrome; depression; and anxiety. However, in August 2000 the claimant reported she had significant pain relief from epidural steroid injections (Exhibit 1F)[A.R. 209]. In June 2001 it was noted in the Pain Clinic progress notes that the claimant's gait and station were within normal limits; straight leg raising was negative bilaterally; and there was no edema involving the lower extremities. [A.R. 191]. [A]n August 2003 MRI of the lumbar spine revealed only mild spinal stenosis, and no evidence of any kind of residual or recurrent disc at L5-S1 (Exhibit B13F)[A.R. 345-46]. The

claimant was not receiving any psychiatric or psychological treatment for her depression or anxiety.

(A.R. 23-24).

The ALJ found that on and after August 4, 2003, plaintiff's RFC included the additional restriction of "substantial limitations in dealing with changes in a routine work setting." (A.R. 24). The ALJ explained that this additional restriction was based on the results of the August 4, 2003 adult mental status examination (A.R. 243-46) conducted by Timothy Strang, Ph.D.:

> In reaching this conclusion, the undersigned finds that, beginning on August 4, 2003, the claimant's allegations regarding her symptoms and limitations are generally credible. On August 4, 2003, the claimant reported that she had thoughts of wanting to die. She stated she felt like a "hermit[.]" Dr. Strang stated that the claimant's affect was dysphoric, weepy and mildly agitated (Exhibit 6F)[A.R. 243-46].
>
> As of August 4, 2003[,] the claimant's psychological symptoms ha[d] increased. The claimant reported she had thoughts of wanting to die and the longer the day went on the less patience and tolerance she had. She stated she was extremely irritable. The claimant averred she had some problems taking her medications due to forgetfulness. Dr. Strang noted that the claimant's sleep disturbances appeared to be severe. The claimant recalled only two of four words after an almost five minute delay. Dr. Strang assessed the claimant with a GAF score of 48, which is indicative of serious psychological symptoms and is work preclusive. Dr. Strang averred the claimant's prognosis was poor to guarded (Exhibit 6F)[A.R. 243-46].

(A.R. 24). The ALJ found that plaintiff was unable to perform her past relevant work. She was 44-years-old as of her alleged onset of disability, and 48-years-old on August 4, 2003, the date the ALJ found that her disability began. Thus, at all times relevant to the claims now under review, plaintiff was classified as a younger individual. (A.R. 24). Plaintiff has a high school education and is able to communicate in English. The ALJ found that the transferability of job skills was not material. (A.R. 25). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 9,460 jobs in Michigan's lower peninsula

that the hypothetical person would have been capable of performing before August 4, 2003. (A.R. 489-91). The ALJ held that this constituted a significant number of jobs. Using Rules 201.21, 201.27 and 201.28 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled before August 4, 2003. He found that on and after August 4, 2003, there was not a significant number of jobs that plaintiff was capable of performing, and held that she was disabled on and after that date. (A.R. 17-27).

**1.**

Plaintiff argues that the ALJ's decision finding that she was not disabled before her disability insured status expired on December 31, 2002, is not supported by substantial evidence. She argues that an award of DIB benefits is warranted because her December 2001 MRI confirmed degenerative disc disease, and because "August 2001 pain management efforts were unsuccessful." (Plf. Brief at 10).[3]

---

[3] Plaintiff had a lumbar laminectomy in 1993. Her December 2001 lumbar spine MRI (A.R. 221-22) yielded the following findings:

> Vertebral alignment is normal. Foci of increased signal in the body of the fourth lumbar vertebra and left sacral ala are consistent with hemangiomata. Defect is noted of the left lamina of the fifth lumbar vertebra. The intervertebral foramina are preserved.
>
> Posteocentral protrusion is demonstrated of the fourth lumbar disc, indenting the ventral surface of the thecal sac, but without evidence of spinal stenosis or of neural impingement.
>
> Diminished height and hydration are noted of the fifth (lumbosacral) disc, with postericentral protrusion, indenting the ventral surface of the thecal sac, but without evidence of spinal stenosis or of neural impingement.
>
> No abnormal area of enhancement is seen. The conus medullaris is at the level of the first lumbar vertebra.

(A.R. 221). The MRI of her cervical spine taken the same day revealed "C5-6 posterior degenerative

It is not sufficient for plaintiff to identify evidence from which the ALJ might have reached a different conclusion regarding her claims. The statutory scope of this court's review is narrow. The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. There is a "zone of choice" within which the Commissioner can act without fear of court interference. *Buxton*, 246 F.3d at 772-73; *White v. Commissioner*, 572 F.3d 272, 281-82 (6th Cir. 2009). "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d at 347. "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477. The August 4, 2003 mental status examination conducted by Dr. Strang (A.R. 243-46) convinced the ALJ that plaintiff was disabled on and after August 4, 2003. The Commissioner's decision denying her claim for DIB benefits because she was not disabled on or before December 31, 2002, is supported by more than substantial evidence.

**2.**

Plaintiff's arguments that the ALJ was biased against her and that the ALJ's reliance on the reports provided by Michigan's Disability Determination Service violated her rights under

---

changes causing a degree of spinal stenosis. No focal disc disease at any level. Mild right foraminal narrowing at C5-6." (A.R. 223). On August 24, 2001, plaintiff returned to a pain clinic for a series of epidural steroid injections. The progress notes state, "Her last series was approximately a year ago, and she has had quite good results from these." (A.R. 187).

the Due Process Clause are frivolous. The following paragraphs are representative excerpts from

plaintiff's brief accusing the ALJ of bias and attacking the medical opinions offered by experts:

> The biased and distorted reports provided by the Disability Determination Service were not only not helpful to the adjudication of this claim, they were clearly erroneous to the degree that this matter must be remanded for a fair review of the record. To the degree that the ALJ relied on those reports the right to due process of the Plaintiff has been compromised. *See Sims v. Apfel*, 530 U.S. 103 (2000), where the Court properly indicated that the Social Security benefits system was intended to be exparte [sic] and claimant friendly.

\* \* \*

> A troubling aspect of this case is the failure of the Agency physicians and employees to conduct a fair and impartial review of the record now before the court.

\* \* \*

> The physical [R]esidual [F]unctional Capacity Assessment (RFC) prepared by the Disability Determination Service on 10/30/03 (Mohiuddin) is incomplete, biased and flawed. (R-254-261).

\* \* \*

> In an effort to conform to the standard set in the RFC, the PRT by Dr. Gallagher, Ed.D., is equally disappointing. After acknowledging a major depressive order as a diagnosis, the PRT is annotated "not receiving treatment!" (R 268). This is a remarkable statement in view of the record now under review. In fact, Plaintiff has been medicated for both anxiety and depression for the entire period relevant to this appeal. See (R-161). Is this error by the DDS reporter negligent or willful?

> The DDS reports contain significant errors of fact. They also fail to provide the required analysis of the medical records provided by the Plaintiff. The reports are so distorted that they rise to the level of a violation of due process. The DDS contribution to this adjudication has been devoid of fundamental fairness.

\* \* \*

> To the degree that the ALJ relied on the DDS reports analyzed above the decision is built on a foundation of sand. While the ALJ is entitled to rely upon the DDS reports, normally they are of such quality that they would not form the basis of a remand. But here, the reports and comments are so flawed that the ALJ may have been influenced to the degree that the evidence which supported an earlier date for the date of disability was overlooked. The

manner in which the evidence provided by Dr. Davis and other treating sources was dismissed out of hand [sic] (ALJ previously found the Plaintiff was not credible; report of Dr. Davis that Plaintiff is not a candidate for employment not discussed as a matter "reserved to the [C]ommissioner"). (R-259, 260).

* * *

Due to the failure of the DDS physician and psychologist to conduct a full and fair review of the record the ALJ has not considered all of the medical conditions which impact the ability of the Plaintiff to work competitively.

(Plf. Brief at 11-13, 20).

A.  ALJ Bias

Plaintiff makes repeated and unsupported assertions that the ALJ was biased against her.[4] Indulgently construed, plaintiff is claiming a violation of her rights under the Due Process Clause because the ALJ was biased against her and her attorney, depriving her of a fundamentally fair hearing. The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364(6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l*

---

[4]Plaintiff did not assert that the ALJ was biased until after the ALJ denied her claim for DIB benefits and a portion of her claim for SSI benefits. She never utilized the procedure for seeking an ALJ's disqualification. *See* 20 C.F.R. §§ 404.940, 416.1440.

This court is encountering an increasing number of boilerplate arguments in social security cases accusing the ALJ of bias against plaintiff, her attorney, and the attorney's law firm. Accusing an ALJ of bias is a very serious charge. It should not be made on a routine basis. The party claiming bias faces a very high evidentiary burden. Thus, litigants claiming that an ALJ was biased are seldom successful. *See, e.g.*, *Yang v. Astrue*, No. 1:08-cv-84, 2010 WL 476022, at * 9-10 (E.D. Cal. Feb. 4, 2010); *Johnson v. Commissioner*, No. 08-4901, 2009 WL 4666933, at * 4 (D. N.J. Dec. 3, 2009); *Martin v. Astrue*, No. 1:08-cv-46, 2009 WL 187716, at * 5-6 (N.D. Ind. Jan. 26, 2009). Plaintiff's counsel has a finite number of pages available within which to make compelling arguments why the Commissioner's final administrative decision should be overturned. This valuable space, and the court's time, should not be wasted on unsupported bias allegations.

*Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)). "The burden of overcoming this presumption rests on the party asserting bias, who must rebut the presumption by showing a conflict of interest or some other specific reason for disqualification." *McCrea v. Astrue*, No. 3:09-cv-68, 2010 WL 235141, at *10 (N.D. Fla. Jan. 15, 2010) (citing *Schweiker v. McClure*, 456 U.S. 188, 195-96(1982)). Additionally, the party must come forward with convincing evidence that "a risk of actual bias or prejudgment" is present. *Collier*, 108 F. App'x at 364; *see Schweiker*, 456 U.S. at 195-96; *Navistar*, 921 F.2d at 1360. Finally, for the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Collier*, 108 F. App'x at 364. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Plaintiff has not carried her burden of demonstrating bias. The hearing transcript shows that the ALJ was extremely patient with plaintiff and her attorney. Even if the ALJ had been discourteous, demeaning, and skeptical, that would not provide a basis for overturning the ALJ's decision. *See Collier*, 108 F. App'x at 364 ("While some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing."). Review of the entire record

does not disclose that plaintiff was deprived of a fundamentally fair hearing or that the ALJ was biased.

Plaintiff's brief expresses her continuing disagreement with the ALJ's credibility determination. However, a mere disagreement with the ALJ's credibility determination is not evidence of bias. *See Blanton v. Social Security Admin.*, 118 F. App'x 3 (6th Cir. 2004); *see also Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995).

B. <u>DDS Reports</u>

Plaintiff labels the reports provided by state agency officials as "biased and distorted," and claims the ALJ's reliance on those reports violated her rights under the Due Process Clause. (Plf. Brief at 11) (citing *Sims v. Apfel*, 530 U.S. 103 (2000)). Plaintiff's arguments cannot withstand scrutiny.

The Supreme Court's decision in *Sims v. Apfel* does not support plaintiff's argument. The Due Process Clause is never mentioned in *Sims* because the Court was not adjudicating a constitutional-level claim. In *Sims*, the issue before the Supreme Court was whether a claimant pursuing judicial review of a final decision of the Commissioner of Social Security waived any issues that were not raised in the party's application for review by the Appeals Council. 530 U.S. at 105. The Court stated: "SSA regulations do not require issue exhaustion. (Although the question is not before us, we think it likely that the Commissioner could adopt a regulation that did require issue exhaustion.)" *Id.* at 109. The Supreme Court declined to impose an judicially-created issue exhaustion requirement in the absence of a supporting statute or regulation. *Id.* *Sims* does support plaintiff's argument that the ALJ violated her rights under the Due Process Clause when he relied

on expert medical opinions generated as part of the administrative review process, an issue that *Sims* did not address.

There is no evidence that the reports from the state agency experts were biased or distorted. State agency psychologist J. Michael McCarthy, Ed.D., reviewed the evidence plaintiff presented in support of her disability claims. On June 4, 2003, McCarthy completed a Psychiatric Review Technique form assessing plaintiff's condition from March 18, 2000, through December 31, 2002. (A.R. 237-41). Psychologist McCarthy made the following entries in the "consultant's notes" section:

- 47 year old female.

- Letter of Dr. H. Davis (4/4/03) notes depression and treatment with an antidepressant.

- MER includes no other evidence of symptoms or treatment for depression or other mental impairments.

- Review of ADL forms indicates a decrease in activities, but they're attributed to her physical problems. She maintains a household with a child (7 years old). She does shopping, cooking, household chores, attending to her son['s] and [her] personal care[,] but at a reduced rate due to pain. She is quite articulate in describing her situation, but there are no specific complaints about depression, nor has she sought treatment for it.

- From the evidence available, the depression noted by Dr. Davis does not impose a severe limitation on her functioning.

(A.R. 241). Psychologist McCarthy offered his opinion that plaintiff did not meet the requirements of Part B of listing 12.04 because she had a mild restriction in activities of daily living, mild difficulties in social functioning, no difficulty in maintaining concentration, persistence or pace, and no episodes of decompensation. (A.R. 239). Dr. Davis's underlying treatment records were not submitted in support of plaintiff's claims. Dr. Davis's April 4, 2003 letter stated that plaintiff had

been receiving antidepressant medication. (A.R. 226). Psychologist McCarthy's observation that plaintiff had received antidepressant medication was entirely accurate. (A.R. 163, 166, 170, 173-74, 191, 194, 196-98, 202, 208, 211, 213, 218, 220). On August 29, 2001, a treating physician, Michael D. Chafty, M.D., stated that plaintiff had "some degree of anxiety." Plaintiff reported that she had gone through a very stressful divorce and that she was very frustrated regarding her husband's mistreatment of one of their children. Dr. Chafty stated, "I believe there may be some depression present as well." (A.R. 185-86). Dr. Chafty related that plaintiff continued to have legal problems and appeared anxious and depressed. He indicated that plaintiff's recent and remote memories were within normal limits, she was oriented as to time, place and person. Her judgment appeared to be adequate. (A.R. 183). Plaintiff cannot reasonably rely on Dr. Strang's August 4, 2003 examination (Plf. Brief at 11, citing A.R. 243-46) as a basis for criticizing Psychologist McCarthy. It is patent that McCarthy did not have the results of an August 2003 examination when he completed his June 4, 2003 assessment. Further, Dr. Strang never purported to evaluate plaintiff's condition at any time before August 4, 2003. The ALJ found that plaintiff was disabled on an after August 4, 2003. I find no error, much less any violation of plaintiff's constitutional rights under the Due Process Clause.

Plaintiff argues that the October 30, 2003 evaluation made by state agency physician Shahida Mohiuddin, M.D. (A.R. 254-61), was "incomplete, biased and flawed." (Plf. Brief at 12). Plaintiff believes that Dr. Mohiuddin improperly rejected Dr. Davis's opinion that plaintiff "was not a candidate for work by stating [that it was an issue] 'reserved for the Commissioner.'" (*Id.*) (citing A.R. 260). This argument is frivolous. On October 30, 2003, Dr. Mohiuddin made an evaluation of plaintiff's physical residual functional capacity. (A.R. 255-56). The ALJ later held that plaintiff was disabled months before this October 2003 evaluation, based on her combination of mental and

physical impairments. Further, as shown in greater detail in the next section of this report and recommendation, a treating physician's opinion that a patient is disabled is not entitled to any particular weight, because it is an issue reserved to the Commissioner. It is an administrative finding made by the ALJ, not a treating physician.

**3.**

On April 4, 2003, Horace J. Davis, D.O., wrote a note addressed "To Whom It May Concern," offering his opinion that plaintiff "would not be a candidate for any form of gainful employment now or in the future." (A.R. 227). The treating physician's letter did not purport to offer any opinion regarding whether plaintiff could perform gainful employment before April 3, 2003. The ALJ found that plaintiff was disabled on and after April 4, 2003, but did so based on Dr. Strang's August 4, 2003 mental status examination, not Dr. Davis's letter of the same date. Dr. Davis's letter stated that plaintiff had been under his care and treatment "for a number of years," but plaintiff did not submit any of Dr. Davis's underlying treatment records in support of her claims for DIB and SSI benefits.

The ALJ was correct when he observed that the issue of disability is reserved to the Commissioner. (A.R. 23). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Dr. Davis's opinion that plaintiff was disabled was not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC,

or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390.

"Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). The credibility of the plaintiff's subjective complaints is an issue reserved to the Commissioner, and a treating physician's opinion regarding the credibility of her patient's subjective complaints is not entitled to any particular weight. *See Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527, 416.927(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

I find no violation of the treating physician rule. The ALJ's opinion is supported by more than substantial evidence and the ALJ complied with the procedural requirement of providing "good reasons" for giving no weight to Dr. Davis's bare opinion that plaintiff would not be a candidate for gainful employment.

**4.**

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence (Plf. Brief at 16-18; Reply Brief at 6). Credibility determinations concerning

a claimant's subjective complaints is peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009). The ALJ's opinion contains a lengthy discussion of the medical evidence, plaintiff's subjective complaints, and

the reasons the ALJ found that her complaints were not fully credible. (A.R. 22-24). I find that the ALJ's credibility determination is supported by more than substantial evidence.

**5.**

Plaintiff argues that the ALJ failed to give adequate weight and consideration to the combined effects of her severe and non-severe impairments. (Plf. Brief at 19). The ALJ's opinion clearly stated that he considered plaintiff's impairments in combination. (A.R. 19, 22-24). Given this statement, the ALJ is not required to further elaborate upon his thought processes. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Mitchell v. Astrue*, 256 F. App'x 770, 772 (6th Cir. 2007); *Simons v. Barnhart* 114 F. App'x 727, 734 (6th Cir. 2004) (The ALJ stated that he was obligated to consider all the claimant's symptoms, found that the claimant had an impairment or combination of impairments that were severe, and the lack of a separate discussion of each of the claimant's multiple impairments "does not mean that the [ALJ] did not consider their combined effect.").

**6.**

Plaintiff argues that the ALJ's decision finding that she was not disabled during the period from January 1, 2003, through August 3, 2003, is not supported by substantial evidence. (Plf. Brief at 19). She argues that "[s]ubstantial evidence of record does not support the finding that the Plaintiff can perform sustained work activities." (*Id.*). She emphasizes that she testified that she "require[d] assistance with completion of her basic housekeeping and child rearing tasks." (Plf. Brief at 20). This is a repackaging of plaintiff's argument regarding the ALJ's credibility determination, and it should be rejected for the reasons previously stated. RFC is the most, not the

least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffith v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is a determination made by the ALJ based upon all the evidence within the record. *Walters*, 127 F.3d at 531. The ALJ's finding regarding plaintiff's RFC for the period at issue (A.R. 24-26) is supported by more than substantial evidence.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: March 4, 2010        /s/ Joseph G. Scoville
                                        United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).